OLLER, PROMOVENTE Y APELANTE, *v.* SOLÁ ET AL., OPOSITORES Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre elevación a escritura pública de testamento hecho de palabra.

No. 2068.—Resuelto en abril 9, 1920.

TESTAMENTO DE PALABRA—REQUISITOS PARA SU VALIDEZ.—Son nulos los testamentos de palabras otorgados en inminente peligro de muerte aunque concurran los requisitos legales necesarios para su validez, si no resulta probada la imposibilidad de escribirlos.

Los hechos están expresados en la opinión.

Abogado de la promovente: *Sr. E. H. F. Dottin.*

Abogados de las opositoras: *Sres. M. F. Rossy* y *J. Martínez Dávila.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Mercedes Oller Tinajero presentó una solicitud a la Corte de Distrito de San Juan, Sección Segunda, alegando que doña Constancia Tinajero y Fernández, soltera, de 65 años de edad, había fallecido en su residencia en esta ciudad de San Juan, P. R., el 9 de junio de 1918, sin dejar ascendientes ni descendientes, habiendo otorgado testamento dos horas antes de morir ante cinco testigos, dejando como su única heredera a su sobrina la peticionaria. En tal virtud dicha peticionaria solicitó que siguiéndose el procedimiento marcado por la ley, la corte finalmente declarara testamento de la Sra. Tinajero lo que resultara de las declaraciones de los testigos que la oyeron otorgarlo.

Doña Concepción Solá viuda de Tinajero, a nombre de sus hijos Eloy y Salvador, sobrinos de doña Constancia, se

opuso a la solicitud, y también se opuso doña María Josefa Tinajero viuda de Viader, hermana de la supuesta testadora. Ambas alegaron que era incierto que se hubiera otorgado el testamento, expresando la primera que la voluntad de la Sra. Tinajero había sido la de instituir por herederos a todos sus sobrinos, por partes iguales.

El asunto se trasladó a la Sección Primera de la corte de distrito y allí se practicó la prueba consistente en las declaraciones de los testigos Saturnina Franco, Ana Gavilán, María Felix, Amanda Miranda, Víctor Maltes y E. H. F. Dottin, por la promovente, y M. F. Rossy por la opositora doña María Josefa Tinajero. La corte tomó bajo su consideración el caso y expresando que la prueba no demostraba la existencia del alegado testamento, dictó sentencia declarando sin lugar la solicitud. No conforme la peticionaria, recurrió para ante este Tribunal Supremo, señalando en su alegato como único error, el incurrido a su juicio por la corte al apreciar la prueba.

De acuerdo con la ley, artículo 709 del Código Civil Revisado, si el testador se hallare en peligro inminente de muerte, puede otorgar testamento ante cinco testigos idóneos, sin necesidad de notario. En tal caso, según exige el artículo 711 del propio código, se inscribirá el testamento, siendo posible. No siéndolo, valdrá aunque los testigos no sepan escribir.

Fija también el legislador el medio de elevar a escritura pública el testamento o codicilo hecho de palabra, y prescribe que resultando clara y terminantemente de las declaraciones que el testador tuvo el propósito serio y deliberado de otorgar su última disposición, que los testigos y el notario, en su caso, han oido simultáneamente de boca del testador todas las disposiciones que quería fuesen su última voluntad, bien lo manifestase de palabra, bien leyendo o dando a leer alguna nota o memoria en que se contuviese, que los

testigos fueron en el número que exige la ley según las circunstancias del lugar y tiempo en que se otorgó y que reunen las cualidades necesarias para ser testigos, el juez declarará como testamento lo que resulte de dichas declaraciones, sin perjuicio de tercero, y mandará protocolizar el expediente. Véanse los artículos 1 al 8 de la ley referente a procedimientos legales especiales, aprobada el 9 de marzo de 1905. Compilación de 1911, página 323.

¿Demostró la prueba que concurrieron en este caso todos los requisitos que exige el estatuto? Veámoslo.

Declararon ante el juez de distrito los cinco testigos que recogieron, según la peticionaria, de labios de la testadora, dos horas antes de morir, su última voluntad con respecto a la disposición de sus bienes. La mayor parte de ellos no expresaron su edad y en sus rápidas declaraciones se describe, en síntesis, su intervención en el acto, así: (1) llamados a altas horas de la noche acudieron a la casa de la Sra. Tinajero y ésta dijo en presencia de todos que quería que sus bienes pasaran a su sobrina Mercedes, la peticionaria, porque era la única que la había asistido en su enfermedad. Que la Sra. Tinajero estaba enferma pero en su conocimiento. Que al día siguiente se enteraron de que había fallecido. El testigo Dottin expresó que fué llamado varias veces por la Sra. Tinajero para otorgar su testamento, pero que cuando llegaba a la casa, ella desistía; que en la noche del 9 de junio fué llamado dos veces, la primera no estaba y la segunda, al enterarse para qué se le quería, contestó: "me quiere hacer dar el viaje de Santurce otra vez en balde, yo no voy ahora, si usted ve que ella está muy grave llame cuando menos cinco testigos y que declare lo que quiera declarar antes ellos"; que al día siguiente supo que la Sra. Tinajero había muerto y fué a su casa y tomó declaración jurada a los testigos presenciales que allí estaban.

No existe en toda la prueba practicada indicación alguna

con respecto a la causa que hizo imposible, si es que la hubo, que la última voluntad de la testadora se consignara por escrito.

Prescindiendo de si los testigos acreditaron o no en forma debida su idoneidad; de si se demostró o no que la Sra. Tinajero se daba cuenta exacta de que se encontraba en peligro inminente de muerte; de si se puede o no desprender con toda claridad de las declaraciones de los testigos que las manifestaciones de la Sra. Tinajero eran en realidad de verdad la expresión deliberada y solemne de su última voluntad, y limitándonos solo a la falta de prueba con respecto al hecho de no haber sido posible escribir el testamento, de acuerdo con la ley y la jurisprudencia debemos resolver que procede la confirmación de la sentencia recurrida.

Los artículos 709 y 711 del Código Civil que hemos citado son iguales a los artículos 700 y 702 del Código Civil Español, e interpretando estos últimos el Tribunal Supremo de España ha resuelto que son nulos los testamentos de palabra otorgados en inminente peligro de muerte aunque concurran los requisitos legales necesarios para su validez, si no resulta probada la imposibilidad de escribirlos. Véanse las sentencias del Tribunal Supremo de España de 16 de febrero de 1891, 69 J. C. 231, y de 5 de noviembre de 1902, 94 J. C. 451, y véanse también los Comentarios de Manresa al Código Civil Español, volumen 5, pág. 571 a 581 de la 3ª. edición publicada en 1910.

Por virtud de todo lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no tomó parte en la resolución de este caso.